IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VALERIE SANDERS,

        Plaintiff,                      Case No. 3:15-cv-01526

v.

                                        Magistrate Judge Frensley
                                        (by consent)
CORRECT CARE SOLUTIONS, LLC,
                                        JURY DEMAND
        Defendant.

_____/

## PLAINTIFF'S MOTION FOR NEW TRIAL

      Plaintiff Valerie Sanders moves this Court for a new trial because she was prejudiced by the exclusion of evidence that was favorable to her, yet Defendant had no such restrictions on the evidence it could present to the jury. The evidence that was impermissibly excluded was: (1) contradictory statements Defendant made to the EEOC regarding Plaintiff's proper "true comparators" vs. the significantly expanded and more beneficial comparator group it presented at trial; (2) Plaintiff's 2014 Pay Raise which was an admission, not a subsequent remedial measure, because the raise did not result in a remedial measure calculated to end the pay disparity; and (3) Defendant opened the door to Melinda Stephens' testimony about CCS' application of pay scales, but Plaintiff was prohibited from probing further. Additionally, Plaintiff was prejudiced by the final jury instructions, as they were confusing and contradictory to Sixth Circuit precedent. Lastly, Defendant's preemptory jury strikes were racially motived and in violation of *Edmonson v. Leesville Concrete Co., Inc.* 500 U.S. 614, 619 (1991).

      **I.**      **Standard of Review**

      A district court has discretion to grant a motion for a new trial only if the court "determines

1

that the verdict is clearly against the weight of the evidence." *Denhof v. City of Grand Rapids,* 494 F.3d 534, 543 (6th Cir. 2007). A motion for a new trial should not be granted unless the moving party suffered prejudice. *Tompkin v. Philip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir.2004)(citing *Erskine v. Consol. Rail Corp.,* 814 F.2d 266, 272 (6th Cir.1987) (holding that a new trial will not be granted on the ground that surprise evidence was admitted unless the moving party was prejudiced). Grounds for a new trial include "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving," as well as "substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 194, 85 L. Ed. 147 (1940).

A district court's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004). An abuse of discretion occurs when the district court "relies on clearly erroneous findings of fact, … improperly applies the law, … or … employs an erroneous legal standard." *Id.; see also United States v. Kingsley*, 241 F.3d 828, 835 n.12 (6th Cir. 2001) (abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made). *United States v. Haywood*, 280 F.3d 715, 719-20 (6th Cir. 2002) (holding that a district court's decision to admit evidence under Rule 404(b) is reviewed under an abuse of discretion standard).

Claims of error in jury instructions require the instructions to be reviewed as a whole in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *Beck v. Haik,* 377 F.3d 624, 636 (6th Cir. 2004) (citing *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992). A judgment may be reversed on the basis of improper jury instructions only if the instructions, when

2

viewed as a whole, were confusing, misleading and prejudicial." *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000); *see also Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) (stating that "we will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless").

## II. Argument

Many of Defendant's Motions *in Limine* and objections to Plaintiff's evidence were a re-argument of its motion to for summary judgment. It was improper to exclude Plaintiff's opportunity to present evidence at trial that demonstrated Defendant violated Title VII. *See Louzon v. Ford Motor Co.*, 718 F. 3d 556, 563 (6th Cir. 2013) (a motion *in limine* that is no more than a rephrased summary-judgment motion, should not be considered). Moreover, by allowing Defendant to set the evidentiary standard by permitting it to present evidence of a significantly expanded comparator group while disallowing Plaintiff to present relevant evidence, Plaintiff was given the Hobson's choice of either focusing on her evidence of discrimination or putting on mini-trials of the significantly expanded comparator group that Defendant pursued for the first time at the summary judgment stage.

### A. Defendant's Contradictory Statements Made to the EEOC Should Have Been Presented to the Jury

At trial, Plaintiff sought to introduce statements made by Linda Callaway on behalf of Defendant to the EEOC that acknowledged the only "true comparators" to Plaintiff were Livergood and Morton, the white employees hired around the same time as Plaintiff. Defendant objected contending that any communication with the EEOC was inadmissible. As a result, the Court held a side bar with Counsel to discuss the issue. During the discussion, Plaintiff's counsel argued that she should be able to introduce this specific statement and offer Defendant's letter authored by Callaway to either be read to the jury or refresh her recollection as to this specific

3

statement and showed the court the statement in the letter.[1] (Attached 7/28/14 CCS to EEOC p. 4). The Court denied this request, instead sustaining Defendant's objection limiting Ms. Callaway's testimony to a more generic acknowledgement that Livergood and Morton were comparators, not "true comparators" as argued by Plaintiff or that CCS made an inconsistent statement to the EEOC. This evidence was critical to Plaintiff's case to demonstrate the comparator group was limited to the timeframe argued by Plaintiff and that Defendant acknowledged the same to the EEOC. Moreover, this evidence undermined the contradictory evidence Defendant presented at trial which significantly skewed the comparator group based on information that was not relevant.

Contradictory statements made by Defendant to the EEOC about Plaintiff's "true comparators" were relevant and should have been heard by the jury. Instead, Plaintiff was limited to eliciting generic testimony that Defendant only acknowledged Livergood and Morton were comparators, which is not much different that the evidence presented by Defendant. Then, after hamstringing Plaintiff's evidence, Defendant was permitted to significantly expand the comparator group to one that inured to its benefit at trial.

A plaintiff in a race discrimination is not limited in the type of evidence that she may present, or how her case is proved. *Patterson v. McLean Credit Union*, 491 U.S.164, 187-188 (1989) (superseded by statute on other grounds). The courts must instead afford the plaintiff a **full opportunity** to convince the jury to disbelieve the employer's account of why it did what it did. *Id.* at 187. Moreover, the Sixth Circuit has held that contradictory statements made by Defendant are fundamentally relevant. *White v. Burlington Northern & Santa Fe Rlwy.*, 364 F.3d 789, 804 (6th Cir. 2004) (aff'd 548 U.S. 53 (2006)); *See also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000) (a jury is entitled to treat a party's dishonesty about a material fact as

---

[1] Plaintiff acknowledged that the letter covered numerous areas, including an offer of settlement. Thus, Plaintiff did not seek to introduce the letter in its entirety, but rather the specific information about the "true comparators."

4

evidence of culpability); *Gee v. Principi*, 289 F.3d 342, 347–48 (5th Cir. 2002) ("An employer's inconsistent explanations for an employment decision "cast doubt" on the truthfulness of those explanations").

Additionally, Defendant's ability to expand the comparator group far past the time frame of Plaintiff's initial hiring to create the inference that it did not discriminate against members of her protected class can be viewed as a subsequent remedial measure to shield itself from liability. While true that there is no 'per se' rule that post charge evidence is either admissible or inadmissible, courts have held that "[g]iven the obvious incentive . . . for an employer to take corrective action in an attempt to shield itself from liability, it is clear that nondiscriminatory employer actions occurring subsequent to the filing of a discrimination complaint will rarely even be relevant circumstantial evidence in favor of the employer." *Lam v. University of Hawaii*, 40 F.3d 1551, 1561 (9th Cir. 1994) (citing *Gonzales v. Police Dep't, City of San Jose*, 901 F.2d 758, 741-61 (9th Cir. 1990). Plaintiff filed her charge of discrimination in May 2014; the evidence Defendant repeatedly presented to the jury included hiring decisions made up until September 2014 to create the inference that other members of Plaintiff's protected class were treated favorably. (Def. Ex. 105, 106). Defendant was successful in excluding evidence that Plaintiff's pay raise made after the fact was a subsequent remedial measure (*see* Sec. B herein *supra*), yet favorable hiring decisions made after the fact were deemed admissible. Notably, Defendant argued against the introduction of evidence that another member of Plaintiff's protected class was also treated unfavorably during the same relevant time period but was permitted to put on evidence that members after the fact were treated better. (ECF 46, 47). Thus, Plaintiff was not allowed to present her full case to the jury, but yet, Defendant was, and indeed was hampered by no evidentiary restrictions.

5

The law is clear that a plaintiff in a race discrimination is not limited in the type of evidence that she may present, or how her case is proved. *Patterson v. McLean Credit Union*, 491 U.S.164 (1989). The courts must instead afford the plaintiff a full opportunity to convince the jury to disbelieve the employer's account of why it did what it did. *Id.* at 187. Exclusion of Defendant's prior acknowledgement to the EEOC that Plaintiff's "true comparators" were Livergood and Morton and admission of expanded comparator evidence was based on an erroneous legal standard that prejudiced Plaintiff.

### B. Plaintiff's 2014 Pay Raise Was an Admission, Not a Subsequent Remedial Measure

The Court excluded evidence that Plaintiff was raised to $13 an hour after an internal review of salaries was done following her allegations of pay discrimination. The basis for this ruling was that the raise in pay was a "subsequent remedial measure" and inadmissible pursuant to Fed. R. Evid. 407. Plaintiff opposed the Motion *in Limine* requesting this exclusion and renewed her assertion that the raise in Plaintiff's pay was not a remedial measure, as it failed to make her whole. Plaintiff, from her initial complaint forward, has alleged that other white employees were paid $14/hour in comparison to her $11/hour wage. An increase in her pay to $13/hour is still $1 short of making her whole and qualifying the raise as a subsequent remedial measure. *See Miller v. Federal Express Corp.*, 56 F.2d 955, 960 (W.D. Tenn. 1999) (finding that a subsequent measure that did not make the employee whole for the discrimination alleged was not a subsequent remedial measure as contemplated by F.R.E. 407). Additionally, this raise in pay, and the manner by which it was done, was an admission by Defendant that her starting wage of $11/hour was inconsistent with her comparators. Specifically, in July 2014, Defendant stated by email that "after review [sic] employee's pay with others in the same field, H.S.A. has decided to raise this employee more than the normal amount." (Pl. Tr. Ex. 2, Def. Tr. Ex. 31). Defendant did not retroactively apply the

6

increase in pay to the time of Plaintiff's hire, but rather made it effective June 29, 2014. (Pl. Tr. Ex. 2). Finally, there was no evidence that Defendant established a practice that set an across the board pay rate for full time MA's. The change in Plaintiff's pay was not a remedial measure "that would have made an earlier injury or harm less likely to occur" as contemplated by Rule 407 because it neither adjusted Plaintiff's pay to that of her white co-workers, nor did it change Defendant's policies with respect to its pay scales.

The decision to exclude this evidence was made pre-trial and before the opportunity to review the evidence in its appropriate context, hindering Plaintiff from fully presenting her case at the start. Plaintiff intended to present evidence to the jury that this raise in pay was done after an internal review of Plaintiff's complaints of pay discrimination that demonstrated the discretion exercised by white hiring managers favored white employee and was inconsistent with the market rate. Further, when the raise was still not commensurate with that of the white employees, Plaintiff again complained about the pay disparity to Defendant and they ignored her concerns. But, yet at trial, Defendant was not hampered in any way in putting on evidence that it complied with its own EEO policies, pay policies or its' managers' version of compliance with the law. This evidence showed an ongoing pattern of discrimination and amounted to an admission by Defendant. Failure to allow Plaintiff to present this evidence was an error that was prejudicial to the Plaintiff.

### C. Testimony by Stephens was Admissible

Plaintiff was prohibited from eliciting testimony from Melinda Stephens, both on direct and cross examination, regarding the Defendant's adherence to pay scales. During the trial, Defendant elicited information from other witnesses, namely Trish Dietrich and Mark King, regarding the current practices of the Defendant regarding various topics. However, when Plaintiff attempted to question Melinda Stephens, the current Health Services Administrator for the

7

Davidson County Contract, regarding her understanding of Defendant's use of pay scales, they were prohibited from doing so. This inconsistent standard of allowing evidence of current practices by Defendant from whom they wanted on the time frame they wanted, but not allowing Plaintiff the same opportunity unfairly prejudiced Plaintiff in presenting her case. Furthermore, Melinda Stephens previously testified at her deposition that she strictly adhered to a pay scale in setting the pay of CCS employees at the Metro Jail. She also testified at trial that she had worked as an HSA for CCS for over ten years prior to her arrival at the Metro Jail. Given that a central issue in this case was Defendant's failure to follow an implemented pay scale, the understanding of a long-serving HSA as to the role of pay scales at CCS was highly relevant to Plaintiff's claims. Exclusion of this evidence, even after Defendant opened the door, was prejudicial error against the Plaintiff.

### D. The Jury Instructions were Confusing and Inconsistent with Established Precedent

Despite repeated objections by Plaintiff, the final jury instructions were confusing and ultimately inconsistent with Sixth Circuit precedent. Plaintiff argued several times throughout both the pre-trial conference and the final charge conference that pretext instructions are disfavored. *See McDole v. City of Saginaw*, 471 Fed. Appx. 464 (6th Cir. 2012). Notably, the *McDonnell Douglas* burden shifting framework was not included in the Parties' proposed instructions. (ECF 60). Only in the middle of trial was a *McDonnell Douglas* pretext and legitimate non-discriminatory business reason instruction included in the proposed instructions. However, later, when given the Hobson's choice to remove part of the instruction, it would have been more confusing given remaining language about direct and circumstantial evidence and pretext that remained in the instruction, Plaintiff was unable to agree to a partial removal of what had become an already confusing instruction.[2]

---

[2] This was not a direct evidence case, particularly since Plaintiff's direct evidence was excluded *in limine*. Thus, to

8

Case 3:15-cv-01526   Document 91   Filed 03/14/18   Page 8 of 12 PageID #: 1325

This precise scenario was reviewed by the Seventh Circuit in *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 767 (7th Cir. 2006), where Judge Posner found, "[t]he judge on his own initiative gave a *McDonnell-Douglas* instruction despite tireless repetition by appellate courts that the burden shifting formula of that case is not intended for the guidance of jurors; it is intended for the guidance of the judge when asked to resolve a case on summary judgment." Once a discrimination case has proceeded to trial, the core issue before the jury is "whether it finds by a preponderance of the evidence that the employer intentionally discriminated against the plaintiff," not whether the plaintiff has made a prima facie case or has shown pretext. *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 597 n.3 (6th Cir. 2003) (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983). As a result, the instructions were confusing and disjointed and did not properly instruct the jury as to the "ultimate issue of discrimination vel non." *Aikens*, 460 U.S. at 714; *see also Vance v. Spencer County Public Schools,* 231 F.3d 253, 263 (6th Cir. 2000) ("A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial"). Further, once again, at Defendant's insistence, the additional repeated language that Plaintiff must prove "intentional" discrimination with no more than a passing explanation of the meaning of "intentional" further exacerbated the confusing nature of the instruction and gave the appearance of a much larger burden on Plaintiff than that of a preponderance of the evidence. Lastly, again at Defendant's insistence, the suggestion in the instruction that the jury should consider a comparator's pay at a previous position as a relevant factor was also error because consideration of such perpetuates a cycle of discrimination, as was the case here. *Cole v. N. Am. Breweries*, 2015 U.S. Dist. LEXIS 6157 *26 (S.D. Ohio Jan. 20, 2015) (citing *Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005),

---

suggest she could have produced direct evidence was error.

*abrogated on other grounds by Fox v. Vice*, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011); *see also Irby v. Bittick*, 44 F.3d 949, 955 (11th Cir. 1995) (holding that "prior salary alone cannot justify pay disparity under the EPA" and noting that "if prior salary alone were a justification, the exception would swallow up the rule and inequality in pay among genders would be perpetuated"). Because the jury instructions provided in this matter focused heavily on the burden shifting framework of *McDonnell Douglas* in contravention of Sixth Circuit precedent and were confusing in several other respects, Plaintiff is entitled to a new trial.

### E. Defendant's Preemptory and "For Cause" Strikes were Racially Motivated

Defendant used its preemptory strikes only to remove two black jurors from the panel in a case alleging racial discrimination, no white jurors were struck. Additionally, Defendant sought to strike two other black jurors "for cause." Defendant did not attempt to strike a single white juror from the jury panel. This behavior was blatant discrimination. The Supreme Court, in 1986, held that the Equal Protection Clause prohibits a prosecutor from using a preemptory challenge against a potential juror solely because of the juror's race. *Batson v. Kentucky*, 476 U.S. 79 (1986). Later, in 1991, the Court extended its holding in *Batson* to private litigants in civil cases. *Edmonson v. Leesville Concrete Co., Inc*. 500 U.S. 614 (1991). A three-part inquiry follows a "*Batson*" challenge. First, the party opposing the challenge must establish a prima-facie case of discrimination by proving that the stricken juror is a member of a protected class, the opposing party used a preemptory strike against a member of that protected class, and the facts and circumstances create an inference that the opposing party struck the juror because of his or her race. The prima facie case "is not onerous but need only raise an inference of discriminatory purpose." *Johnson v. California*, 545 U.S. 162 (2005). The burden then shifts to the party attempting the strike to provide a race-neutral justification. *Purkett v. Elem*, 514 U.S. 767 (year).

The striking party need only provide a reason based on something other than the juror's race. *Hernandez v. New York*, 500 U.S. at 360 (1991). However, the party seeking the strike should be ready to show that it applied its given justification consistently. *Miller-El v. Dreke*, 545 U.S. 231 (2005) (overturning conviction where prosecutor's explanation for striking black juror was not applied to white jurors); *Doss v. Frontenanc*, 14 F.3d 1313 (8th Cir. 1994) (finding race-neutral reason is pre-textual if striking party fails to strike other jurors with same characteristic). Finally, the third inquiry is one for the court, whereby it should evaluate whether the moving party proved purposeful discrimination.

Plaintiff sufficiently raised a prima-facie case of discrimination following Defendant's use of two preemptory strikes on two black jurors. When the burden shifted to the Defendant to provide a race-neutral reason for the strikes, they provided a justification that was not applied evenly to other white jurors on the panel. Defendant's alleged that a black female was struck from the panel due to her testimony regarding the role of personality vs. qualifications in making hiring and pay decisions. Notably, another white male testified to the exact same ideals as the black female juror and nodded his head in affirmation as she spoke, but he was not struck from the panel. A justification applied inconsistently establishes pre-text. *Doss,* at 1316-1317. Defendant also relied on the fact that two black jurors remained on the panel as evidence that the strikes were race-neutral. While true that the final composition of a jury may be a consideration of the Court in determining whether the race-neutral reason proffered is pre-textual, so too may the race of other jurors who have been removed by preemptory challenge or for cause. *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004). Here, all jurors struck by Defendant by preemptory challenge were black. Additionally, Defendant attempted to strike two other black jurors "for cause" but their requests were denied on other grounds. Taken together, these facts weigh in favor of finding Defendant's

proffered race-neutral reasons were pretextual. For these reasons, Plaintiff's "*Batson*" challenge was well taken and improperly denied.

###   III.   Conclusion

Because Plaintiff was presented from putting on her case based on evidentiary exclusions, yet the Defendant was allowed to put on its case unfettered from any evidentiary constraints; the jury instructions were confusing and inconsistent with the law; and Defendant's jury selection process was not race-neutral, a new trial is warranted.

WHEREFORE Plaintiff requests the Court GRANT Plaintiff's Motion for New Trial.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter Williams BPR # 022407
Paige M. Lyle BPR# 032959
Collins & Hunter PLLC
7000 Executive Center Dr., Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
paige@collinshunter.com

### CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the foregoing has been filed this 14th day of March, 2018 by electronic mail to counsel of record: Mark E Stamelos, FORD HARRISON LLP, 150 Third Avenue South, Suite 2010, Nashville, Tennessee 37201; mstamelos@fordharrison.com.

  */s/ Heather Moore Collins*
Heather Moore Collins